Good morning, and may it please the Court, Terry Donohue on behalf of Mark Maring. I'd like to reserve one minute for rebuttal. Your Honors, we're here today on an appeal of an order denying Mr. Maring's discharge in bankruptcy court under 727-A4A, which concerns a knowing and fraudulent false oath. Because of the time limits, I'd like to focus on some facts I'd ask the Court to consider in its decision. I might start speaking a little quicker to try to get in under the line here. I'd like these facts to be considered in context with a question raised by this Court in Inouye Roberts' 241 Fed Appendix of whether or not the omission or false oath conceals anything of value to the estate. And taking that in mind, I'm referencing page numbers from the excerpts. So you really want to go to the concealment or materiality issue at this time? Especially in the first issue, Your Honor. The second issue I think concerns this advice of counsel. There's two fact situations which the Court relied on. The first fact situation concerns Mr. Maring's deposition about two months prior to trial. And it's important to note this concerns his testimony as to when he prepared and signed 21 notes, which were attached to his mother's proof of claim. There's no allegation as to false oath at trial. There's no allegation as to false oath as to the amount owing. When this first came into our office on appeal, I assumed that he was being alleged he lied about the amount owing. That is not the basis for the non-denial. It concerns when he signed and prepared these 21 notes. Appellee's transcript 471 to 492. Just so I understand, so what he may have said on the two prior occasions that were inconsistent with what he said at trial is not really relevant to our determination? No, Your Honor. In fact, the deposition transcript, which I was about to reference, goes on to clarify that Mr. Maring came back from a break at the deposition and stated that his testimony concerning these 21, the dates on these 21 notes was incorrect. At trial, on several occasions, I can cite him to the court. Each time he was presented again with this testimony from his deposition to attempt to impeach him, he indicated, I was mistaken at deposition. And specifically, pages 489 to 492 of Appellee's designation, Mr. Maring explains that he was mistaken at the deposition. What Mr. Bush did was present him with about ten of these notes, and each time he was asked, when did you prepare and sign these? Mr. Maring said, at the time the money was advanced. He was then presented with two separate notes, consolidated notes, and he didn't recognize those notes. And he takes a break, comes back, and says, my testimony is incorrect. And what's interesting, Your Honor, is the 21 notes, those total $300,492. The two consolidated notes that came in, which were also to his mother, are the exact same dollar amount. The dollar amounts weren't in question here. And those are just not just, but they're evidence of indebtedness. And he explains. Let me ask you a question. I mean, you're going through this pretty carefully, but didn't we have a trial in front of the bankruptcy judge about this issue? Your Honor, the issue was ---- I mean, the bankruptcy judge suggested that we were going to have ---- I mean, first of all, he allowed the amendment. Then after allowing the amendment, then he decided he was going to have a hearing or a trial on these very issues as to whether your client ought to be discharged or not. That's correct. Based on these particular issues that you have in front of us. Yes. So what's the standard of review for me after the bankruptcy judge has looked at materiality, looked at whether this was fraudulent or not, and he's now got all the evidence in front of him making those determinations. What's my standard of review? Your standard of review on a factual determination is clearly erroneous. So I have to find that the bankruptcy judge then was clearly erroneous in his determinations about materiality? Or de novo review, Your Honor, as a matter of law. Well, how do I get to de novo when the bankruptcy judge is making the factual determinations? And that's what you're really challenging right now. I am challenging that, Your Honor, because the bankruptcy court didn't make a materiality determination concerning these notes. The court at trial, what was in front of Judge Steiner at trial, was Mr. Merrion acknowledging he made a mistake. The court, in fact, stated under Impelli's number 353, he testified. He's referring to Mr. Merrion. He testified he made a mistake, later discovered it was wrong or incorrect. The court acknowledges that. In fact, Mr. Merrion at trial testified that the 21 notes were signed on December 5th or 6th in 2006, at or around the time of the proof of claim. Judge Steiner said more than that, though, didn't he? I mean, he was somewhat critical of Mr. Merrion's credibility and discussed the implausibility of having to prepare to tell the truth, something to that effect. Well, he questioned, Judge Steiner's question was, why would you have to prepare to tell the truth? But what actually happened in this deposition, Your Honor, was that the notes had never been discussed. So we're presenting, Mr. Merrion was presented with 21 notes and then these two separate notes, all in the same dollar amount, and asked to remember when he signed or prepared these things. At best, it's confusing testimony, but as you read those pages, those 20-some-odd pages of the deposition, they come back from the break and Mr. Merrion says, I was mistaken. These two notes are a consolidation I did for the 2005 advances and the 2006 advances, and the dollar amounts are identical. And he posed the question of looking specifically at what the court hung its hat on in terms of the testimony concerning when he prepared these notes. You have to ask yourself, how does that conceal anything of benefit to the estate? The proof of claim has not been objected to. The proof of claim was filed in December of 2006. This case is still pending two-and-a-half years later. That proof of claim is still a file and not subject to objection. And so I think on the first fact issue concerning the testimony at deposition, I think materiality is a huge issue on that. The second fact issue concerns this Porter transfer of $50,000 and whether or not it should have been disclosed under Statement of Financial Affairs No. 10, which requires transfers within two years that are out of the ordinary course of business. So there first has to be a determination whether or not it was in or out of the ordinary course of business. Testimony at trial under Appellant's pages 156, Mr. Merrion testified that he told his counsel the who, what, how much he paid her, an ex-girlfriend, how much he paid her and when he paid her. Tom Bucknell, who handled his litigation, testified at Appellant's No. 143, he told Mr. Merrion he could make this payment. And then Mr. Merrion goes into bankruptcy counsel, and they answer none. They don't identify this. And you then have a curious discussion for about 12 pages, Appellants 157 and 169, about this advice of counsel. And what eventually happens, Your Honors, is the court asks Ms. Abig, who was representing Mr. Merrion, are you taking responsibility for the answer of none under this No. 10? And she answers yes. Mr. Bush is objecting now as to whether or not this should be raised at trial. And the court on two occasions acknowledges that Mr. Merrion answered none on advice of counsel, but the court did not concede it's a proper defense, page 163 and 165. Mr. Bush raises the issue again about whether or not what's the court ruling on this. And the court says, and this is a quote, he's making a factual determination. That's at page 165. But again, counsel, it seems to me that what we're again deciding is whether the bankruptcy court, who is having a trial and is making the determinations that he has to regarding the defenses involved here, whether that bankruptcy court has abused his discretion or gone outside of what we would allow the bankruptcy court to do, who's down there hearing the evidence, on defenses that the bankrupt would make. Now, the bankruptcy court is better able to make those. So how do I get around this abuse of discretion standard? It seems to me the bankruptcy court can believe everything that happened there today, or he can look in their eyes and he can hear what they're doing and he can hear the question. He can say, I don't believe a thing about it. Your Honor, the bankruptcy court did believe Mr. Merring. The bankruptcy court did believe Mr. Merring. The bankruptcy court said as to that defense, I conclude the defense that popped up in the last minute, namely I did this on advice, was not applicable here. This debtor is well-educated, long experience, sophisticated, who can read Question 10 just as well as anybody else. This debtor can't hide behind that defense. I don't believe the advice was even given. Your Honor, the court had already made a factual determination that it had been, and the court ruled two weeks after the trial without the benefit of the transcript that we have in front of us right now. And that court said it is making a factual determination as to the advice of counsel. That's on page 165. And whether or not it's an available defense may negate, then, the fraudulent intent. But the court made that decision without the benefit of the transcript that we now have. That is what's so surprising. If you read that language for about 12 pages, there's no question that you look at it and say the court's accepted this. Two weeks later, the court, without the benefit of the transcript, reverses itself. Your Honor, I'd like to reserve 30 seconds for rebuttal. All right. Thank you. Thank you for your argument. May it please the court. My name is Christy Tobin. I represent PG Alaska Crab Investment Company and Padilly, which I'll refer to together as PG Alaska. I will first address the May 16th deposition testimony. While Mr. Donohue spoke in terms of materiality, it seems like we were actually talking about the court's findings with respect to knowing and fraudulent. I'll discuss that and materiality. As to the May 16th deposition testimony, the court found that at that deposition, Mr. Marin gave three false versions with respect to his execution of the 21 promissory notes. At trial, he admitted his deposition testimony was wrong, that he was mistaken, and that at the deposition he was simply not prepared for questions about the notes. The bankruptcy court found that the evidence is clear that the deposition testimony concerning the notes is repeatedly false, that it failed to see why a witness had to be prepared in order to tell the truth. Now, really, six months prior, Marin created and backdated 21 separate promissory notes to attach to his mother's proof of claim. But at his deposition six months later, he was unprepared to testify about the notes. He states that his testimony was mistaken, that at his deposition he didn't just answer questions incorrectly about the notes. He fabricated affirmative details about how he would sometimes sign a group of notes when he returned from Mexico and give them to his mother because he wasn't there at exactly the time that she had transferred the money. That's a complete fiction. That's different than being mistaken and maybe answering a question a little bit wrong. The simple answer is that he was unprepared, but he was unprepared to tell the truth at his deposition, and his testimony was knowing and fraudulent. There's ample findings in the evidence and in the record to find that the Mary Porter transfer and the false deposition testimony were both knowing and fraudulent. As to materiality, in rewrites, a case cited by Marin in its briefing indicates that, even if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditor's ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition. Similarly, if the omission interferes with the possibility of the preference or fraudulent conveyance action, the omission may be considered material. With respect to the deposition testimony, obviously Mr. Marin's failure to testify truthfully at his deposition adversely affected PG's ability to investigate his pre-bankruptcy dealing and financial condition because it had to then depose Betty Marin, Mr. Marin's mother, before Marin finally came clean with the true version of events at trial. And I will go back and note that at the deposition, let's see. I'm sorry, at his deposition, when he came back from his break, he still didn't give the true version of events that had occurred. So it wasn't until after his mother's deposition that he actually came clean at trial with the true story. And in addition, with respect to materiality, Marin testified that the notes accurately reflected the transactions. That's not true. Two of Betty Marin's transfers were to Orion Fisheries, Inc., not Mr. Marin. Orion Fisheries, Inc. is in its own bankruptcy. They're administratively consolidated but not substantively, which means that a claim of Betty Marin in the Orion Fisheries case is not entitled to a distribution from the assets of the Marin estate. So both of these meet the standard of materiality. With respect to the advice of counsel. Before you go to advice of counsel with regard to the transfer to Ms. Porter, what does the record show with regard to these types of transactions, the regularity of these on the part of Mr. Marin? The record shows that the loan had been made four years prior from Ms. Porter to both Mr. Marin and to Orion Fisheries, and that aside from a small payment in September of 2005, right before the $50,000 transfer, a payment had not been made to Ms. Porter for almost three years. Additionally, the payment at issue overpaid Ms. Porter by $12,000, certainly something that had never occurred previously. With respect to the Mary Porter transfer, the court found that this type of transaction, this Mary Porter transaction was not made in the ordinary course of business, that it was not conceivable that a transfer by a debtor to a former significant other with respect to loans that had been made to a non-debtor third party, Orion Fisheries, four years prior would be ordinary. Further, the court found that Marin did not disclose the Mary Porter transfer on his statement of financial affairs. And finally, as the court noted, that Marin is a well-educated, long-experienced, and sophisticated businessman who could read Question 10 on the statement of affairs just as well as anyone. Now that goes to the advice of counsel that Mr. Donahue was discussing. Mr. Marin has a difficult record on which to establish an advice of counsel defense. First, the court stated that it did not believe that the advice of counsel had been given. Second, there's no testimony in the record that the advice had been given. Statements of counsel are not evidence, and even if they were, the court is free to disbelieve testimony that it doesn't find to be credible. The transcript at Apelli's excerpts of Record No. 9 at 169 indicates that the court was incredulous that the advice had been given. Even if the advice had been given, assuming that were the case, Marin would have had to reasonably have relied on it. The case of Inri Muscatel indicates that reliance on advice of counsel to disregard a clear question on the statement of financial affairs is clearly unreasonable, particularly where the debtor is sophisticated, which is what the court found in this case. The Ninth Circuit Court of Appeals case of Inri Bisno indicates that full disclosure of relevant facts to the attorney is required in order for the advice of counsel defense to be considered. Here, there is no evidence that Mr. Marin disclosed to his counsel, Ms. Abing-Bigg, that the $50,000 transfer to Mary Porter was repaying loans that had been made, not to Mr. Marin, but to Orion Fisheries. Therefore, the court was correct in finding that the advice of counsel defense was not availing to Mr. Marin. I want to talk about the amended complaint issues. PG Alaska filed a motion to amend its complaint. Subsequent to that, Mr. Marin. Given that counsel didn't give any argument about that, do you really want to go into that? Not unless the court has questions. Questions? No. All right. Thank you. Thank you. Can I use some of Ms. Tobin's extra time? No. Your Honor, I know this is a tough question. We're on appeal. The standard is high. The case law is clear that non-dischargeability should be ruled in favor of the debtor and strictly against the party asserting it. To assert that a lay person, regardless of how well educated, should know what ordinary course of business means when we have numerous case law in it, I think is just being unreasonable. As to the testimony, again, the testimony was limited to the date the notes were prepared. There's no question that there's no allegation or proof that, in fact, Mrs. Marin wasn't owed this money. That was not the basis for the court's decision. Thank you. Thank you, Your Honor. Case 0835471, Maring v. P.G., Alaska Crab Investment, is submitted. We'll now hear case 0835264, American Guarantee and Liability Insurance Company v. Westchester Surplus Lines Insurance Company.
judges: Canby, Smith N. R., Pro